WALTER A. BAUDE, PLAINTIFF-RESPONDENT, v. CHEMI-
CAL BANK AND TRUST COMPANY, ADMINISTRATOR
CUM TESTAMENTO ANNEXO OF THE ESTATE OF
MARY A. OTT, DECEASED, DEFENDANT-APPELLANT.

Argued February 11, 12, 1935—Decided May 17, 1935.

For the appellant, *William Elmer Brown, Jr.*

For the respondent, *Harry R. Coulomb.*

The opinion of the court was delivered by

PARKER, J.   The suit is for the alleged conversion by the appellant bank as administrator with will annexed of Mary A. Ott, deceased, of some $30,000 in value of negotiable bonds claimed to be the property of the plaintiff.   There was a judgment for plaintiff, and the bank appeals.

A clear understanding of the case set up in the complaint is important.   What it charges is that plaintiff owned and possessed the bonds and placed them in the custody of the deceased Mrs. Ott for safe keeping and redelivery on demand; that she died in possession of them, leaving a will which was proved and whereby she appointed her son Henry as executor

and trustee thereunder; that he renounced and appellant bank was appointed administrator *cum testamento annexo;* that plaintiff made demand on the bank for the bonds or their value, but the bank "neglected and refused to return" the bonds, but knowing them to be the property of plaintiff, "and contriving and fraudulently intending to deprive plaintiff of said bonds and coupons belonging thereto, hath refused and doth still wholly refuse and has not yet delivered to plaintiff said bonds and coupons * * * and on, &c., at, &c., disposed of said bonds and converted the same to its own use, to the damage," &c.

It should be observed at this point that the complaint does not charge a conversion by the deceased Mrs. Ott. An action for such conversion would lie against the representative by virtue of the statute. 1 *Chit. Pl.* *102. The statute is at least as old as Paterson's Revision: *Pat.* 154; *Elm. Dig.* 165; *Comp. Stat., p.* 2260, § 5; *Terhune* v. *Bray,* 16 *N. J. L.* 53. See 3 and 4 *Wm. IV. c.* 42, § 2. But as we have said, no such conversion is charged. True, the complaint does not in terms aver that the bank received the bonds on taking charge of the estate, but it does say that Mrs. Ott died in possession of them, so manifestly no conversion by her is intimated. The action is plainly and necessarily predicated on a taking possession of the bonds by the bank and a subsequent conversion by the bank by sale, refusal to deliver or otherwise.

The answer denied that Mrs. Ott, at the time of her death, was in possession of any bonds belonging to the plaintiff. It also denied disposing of the bonds, or converting them. These denials, taken in connection with the rest of the record, we deem adequate to put in issue the question whether defendant had physical possession or control of any such bonds at any time. Indeed, the trial judge treated this point (and properly) as in issue, for he told the jury that if it were shown that the plaintiff entrusted the bonds to Mrs. Ott, proof of demand for possession and refusal by the administrator to comply would constitute *prima facie* proof of conversion. He went even farther, and charged that even if the

bank never had possession physically of the bonds, that would not relieve it of liability as administrator if the jury found that plaintiff deposited the bonds with Mrs. Ott, that he owned them and was entitled to possession of them when he demanded them, and that defendant failed and neglected to return them.

The present action is manifestly one of trover. The quoted averment of conversion is from the old precedents. 2 *Chit. Pl.* 835, 837. The gist of the action is conversion, and conversion implies possession—by finding, according to the old fiction, but any physical possession will suffice, lawful or unlawful, though treated as lawful in the old forms. Possession, however, there must have been. If the suit were under the Executors act, already cited .(*Comp. Stat., p.* 2260), possession by Mrs. Ott would support a suit against her personal representatives, but no such claim appears on this record. The charge is in essence, that the bonds after her death came to the hands of the bank, and that the latter converted them. If they never came to the hands of the bank, there could have been no conversion by it; and the bank owed no duty to the plaintiff, as to one interested in the estate, to collect assets of such estate, with liability for negligence in failing to do so. If it had actually received the plaintiff's bonds, and refused to recognize his title, he could have sued in replevin (*Boyle* v. *Knauss,* 81 *N. J. L.* 330; *Veader* v. *Veader,* 89 *Id.* 727) ; or in trover. But that is not this case. It was in proof, uncontradicted save by the "presumption" submitted to the jury in the charge, that Mrs. Ott's safe deposit box was examined shortly after her death in the presence of the inheritance tax official, and that certain certificates of stock in the name of plaintiff were found therein and delivered to him, but that the bonds, which were coupon bonds and negotiable, were not found at all. So, what proof there is, indicates that the bonds had disappeared (assuming that Mrs. Ott had them) before defendant took charge.

To make out a case on this record the plaintiff had the burden of showing (1) that Mrs. Ott in her lifetime had possession of his bonds under a duty to deliver them when

demanded; (2) that she died in possession of them; (3) that defendant came into possession of them after her death, and (4) that defendant being in such possession, had converted them. There was no legal proof of any one of these things except the first. There was no presumption that because Mrs. Ott once had them, the defendant came into possession of them; and no liability under the present complaint was to be predicated on a mere delivery by plaintiff to Mrs. Ott of the bonds, her death, and the failure of defendant to "return" something not shown to have come at any time to its possession.

It may well be that the trial judge should have directed a verdict for defendant when so requested. But we need not deal with that point, as we are clear that the portions of the charge above considered, which were duly excepted to and assigned for error were harmfully erroneous, and must lead to a reversal of the judgment and a remand of the cause for a new trial.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, JJ. 14.